Laurence Paradis (SBN 122336)
Stuart J. Seaborn (SBN 198590)
Zoe Chernicoff (SBN 274545)
Haben Girma (SBN 293667)
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Fourth Floor
Berkley, CA 94704-1204
Tel: (510) 665-8644; Fax: (510) 665-8511
Email: general@dralegal.org

Paula D. Pearlman (SBN 109038)
Paula.Pearlman@lls.edu
Richard Diaz (SBN 285459)
Richard.Diaz@lls.edu
DISABILITY RIGHTS LEGAL CENTER
800 S Figueroa St., Suite 1120
Los Angeles, CA 90017
Tel: (213)736-1334 Fax: (213) 736-1428

2:14-CV-4307

Linda M. Dardarian (SBN 131001)
ldardarian@gbdhlegal.com
Andrew P. Lee (SBN 245903)
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
Tel: (510)763-9800 Fax: (510) 835-1417

Attorneys for Plaintiffs and the Proposed Class

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

HECTOR OCHOA, CYNDE SOTO, CATHY SHIMOZONO, BEN ROCKWELL, and  SHARON PARKER, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

CITY OF LONG BEACH, a public entity; BOB FOSTER, in his official capacity as Mayor; ROBERT GARCIA, SUJA LOWENTHAL, GARY DELONG, PATRICK O'DONNEL, GERRIE SCHIPSKE, DEE ANDREWS, JAMES JOHNSON, AL AUSTIN, and STEVEN NEAL, in their official capacities as members of the Long Beach City Council,

Defendants.

Case No.: CV

**CLASS ACTION**

**COMPLAINT FOR VIOLATIONS OF:**

1. **Americans with Disabilities Act (42 U.S.C. § 12131, *et seq.*)**
2. **Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794, *et seq.*)**
3. **California Government Code Section 11135, *et seq.*
4. **California Government Code § 4450, *et seq.*
5. **California Disabled Persons Act (Cal. Civil Code § 54)**

## JURISDICTION AND VENUE

1.      This is an action for declaratory and injunctive relief, brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 to 12213, specifically Title II of the ADA, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, *et seq.*, California Civil Code § 54, *et seq.* ("the Disabled Persons Act"), California Government Code § 4450 *et seq.*, and California Government Code § 11135, *et seq.* to redress systemic civil rights violations against people with mobility disabilities by the City of Long Beach and their elected officials.

2.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for claims arising under the ADA and Section 504.

3.      This Court has jurisdiction to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 65 of the Federal Rules of Civil Procedure.

4.      Under the doctrines of pendent and supplemental jurisdiction, this Court has jurisdiction over claims alleged herein arising under California state law. 28 U.S.C. § 1367.

5.      Venue over Plaintiffs' claims is proper in the Central District of California because Defendants reside in the Central District of California within the meaning of 28 U.S.C. § 1391, and because the events, acts, and omissions giving rise to Plaintiffs' claims occurred in the Central District of California.

## INTRODUCTION

Plaintiffs complain of Defendants herein and allege that:

6.      This class action seeks to put an end to systemic civil rights violations committed by the City of Long Beach ("the City"), its Mayor, and its City Council Members in their official capacities (collectively, "Defendants") against persons with mobility disabilities, which include persons whose disabilities require that they use mobility aids, such as wheelchairs, scooters, canes, walkers or crutches.

7.      The City's curb ramps, sidewalks, crosswalks, pedestrian crossings and other walkways (hereafter "pedestrian rights of way") frequently contain access barriers that

expose persons with mobility disabilities to many hazards, including barriers that force wheelchair users to roll in the streets alongside vehicular traffic. The City has been required for more than three decades to identify and remedy such access barriers but has failed and refused to meet this obligation. As a result, Named Plaintiffs and other persons who have mobility disabilities must choose between remaining segregated from significant kinds of daily activities -- including visiting public facilities, places of public accommodation, or friends, and accessing public transit stops -- and thereby remaining safe, or risking injury or death by traveling on or around inaccessible pedestrian rights of way. The lack of access to the City's system of pedestrian rights of way deprives people who have mobility disabilities of the basic right to travel independently and prevents them from being fully integrated into community life.

8.     Plaintiffs include five individuals with mobility disabilities who bring this action on behalf of themselves and all persons with mobility disabilities who are being discriminated against and subjected to hazardous conditions due to the access barriers in the City's pedestrian rights of way.

9.     The City's pedestrian rights of way constitute a key public program, service or activity within Defendants' jurisdiction. Defendants provide this public program, service or activity for the benefit of residents of and visitors to the City of Long Beach. By refusing to provide persons with mobility impairments meaningful access to this key public program, service or activity, Defendants discriminate against persons with disabilities in violation of federal and state law.

10.     The discrimination and denial of meaningful access to the City's pedestrian rights of way for persons who have mobility disabilities complained of herein is the direct result of Defendants' policies and practices with regard to the City's pedestrian rights of way and disability access, including, but not limited to, the following:

a.     The failure to install curb ramps at intersections in the City that are necessary to provide meaningful access to the pedestrian rights of way;

b.     The failure to develop and implement an adequate process for identifying

intersections and corners throughout the City at which curb ramps are necessary to provide meaningful access to the pedestrian rights of way;

c. The failure to install accessible curb ramps at locations where no curb ramps exist, or where inaccessible curb ramps exist, within the time required by applicable state and federal disability access laws or on any other reasonable schedule;

d. The failure to install accessible curb ramps within the time permitted by statute or within any other reasonable time frame, after receiving a request to do so or otherwise being notified or becoming aware of the need for a curb at a particular location;

e. With respect to intersections on streets that are resurfaced or otherwise altered or newly constructed, the failure to install accessible curb ramps at those intersections;

f. With respect to newly constructed curb ramps, the failure to utilize or require and enforce the utilization of design standards that comply with acceptable federal design guidelines and California state law access requirements;

g. The failure to ensure the repair or elimination of mid-block barriers to access on City pedestrian rights of way in the form of broken, cracked, crumbled, steep, sunken, uneven, caved or otherwise inaccessible surfaces, improper slopes or cross slopes, as well as obstacles placed in the path of travel, such as bus stop benches, trash cans, light poles, or signage, when necessary to provide meaningful access to the pedestrian rights of way;

h. Curb cuts which are absent or not properly positioned such that they force disabled pedestrians to travel around the corner in the street alongside vehicular traffic in order to access a crosswalk;

i. Curb ramps that are improperly designed and/or constructed such that they have multiple deficiencies. These deficiencies often include one or more of the following:

    i. Slopes on curb ramps that are too steep;

2:14-cv-04307-DSF-FFM   Document 1   Filed 06/04/14   Page 5 of 32   Page ID #:5

ii.   Landings at the top of curb ramps that do not provide enough space for a wheelchair to maneuver onto or off the ramp, forcing the disabled pedestrian to use the much steeper side flares or roll off the sidewalk entirely;

iii.   Gutter pans at the bottom of curb ramps which have excessive counter slopes. The combination of excessive curb ramp slope and/or gutter pan counter slope often forces wheelchair users to scrape the paving with their foot rests and can even bring a wheelchair or scooter to a full stop, creating risks of falling and injury; and

iv.   Lips at the bottom of curb ramps where the ramp meets the gutter. Such lips create additional risks of scraping the pavement and/or sudden stops and possible falls and injury. Federal access codes have called for smooth transitions at the base of curb ramps for several decades.

j.   The failure to adopt or implement adequate procedures for inspecting, repairing and maintaining the pedestrian rights of way to ensure they are free from barriers to access;

k.   With respect to portions of streets that are resurfaced or otherwise altered or newly constructed, the failure to repair or eliminate mid-block barriers to access on City sidewalks and other pedestrian rights of way;

l.   The failure to adopt, implement or enforce ordinances or other requirements necessary to ensure that pedestrian rights of way are kept free of temporary or permanent obstructions resulting in barriers to access, such as broken, cracked, crumbled, steep, sunken, uneven, caved, or otherwise inaccessible surfaces, improper slopes or cross slopes, as well as obstacles placed in the path of travel, such as bus stop benches, trash cans, light poles, or signage;

m.   The lack of an adequate plan, or failure to implement an adequate plan, to maintain accessible pedestrian rights of way once they are built;

n.   The lack of an adequate plan, or failure to implement an adequate plan, to provide accessible temporary pedestrian routes when the regular pedestrian routes are

- 5 -
**CLASS ACTION COMPLAINT**

blocked due to construction or other activities; and

o.   The failure to establish effective means for class members to easily report access barriers along the pedestrian rights of way and for follow up by the City on those complaints that are reported.

11.   These policies and practices, or lack thereof, have resulted in discrimination against persons with disabilities in the form of denial of access to the City's pedestrian rights of way that manifests in common ways throughout the City. Large sections of the City's thousands of miles of pedestrian rights of way are in need of repair and are not accessible to persons with mobility disabilities.

12.   As a result of the above, the City's pedestrian rights of way, when viewed in their entirety, are characterized by numerous physical access barriers, including but not limited to the following:

a.   Unsafe, noncomplying (slopes too steep, hazardous cross-slopes, high curb ramp lips), or missing curb ramps;

b.   Broken pedestrian rights of way that are cracked, crumbled, steep, sunken, or uneven, caved or that have improper slopes or broken and inaccessible surfaces;

c.   Physical obstacles on the sidewalk between intersections, such as improperly placed signs, poles, trash cans, or bus stop benches; and

e.   Improperly designed and/or constructed pedestrian walkways that are too steep, too narrow, contain steps or other vertical changes in elevation, and other barriers that make them difficult or impossible for pedestrians with mobility disabilities to safely use.

13.   The accessibility of pedestrian rights of way goes to the heart of the purpose of the Americans with Disabilities Act ("ADA") and other disability rights laws that mandate full integration.  Defendants provide and are responsible for maintaining these public pedestrian rights of way, which constitute an essential government program, service or activity for City residents and visitors alike.  Yet, when viewed in its entirety,

this system of pedestrian rights of way is not accessible to persons with mobility disabilities, in violation of multiple federal and state disability rights laws. This lawsuit seeks to force Defendants to comply with these laws, and finally, over 20 years after the enactment of the ADA, 40 years after the enactment of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq*. (the "Rehabilitation Act"), and many decades after enactment of California's disability rights protections, provide access to the City's pedestrian rights of way for all residents and visitors to the City with mobility impairments.

14.    Defendants' repeated failures to provide accessible pedestrian rights of way violate Title II of the ADA, 42 U.S.C. § 12131, *et seq*., and its accompanying regulations, Section 504 of the Rehabilitation Act, and its accompanying regulations, as well as analogous state statutes including California Government Code § 11135, California Civil Code § 54, *et seq*. and California Government Code §4450. Such failures are particularly egregious in light of the Ninth Circuit's decision in *Barden v. City of Sacramento*, 292 F.3d 1073 (2002), which held that "Title II's prohibition of discrimination in the provision of public services applies to the maintenance of public sidewalks."

15.    Plaintiffs are individuals with mobility disabilities. Such individuals require curb ramps that are properly designed, located, constructed, and maintained so that they can use the pedestrian rights of way to travel to and from their desired destinations without being required to travel on City streets in traffic and or traverse hazardous and unsafe curb ramps. Such individuals also require that pedestrian rights of way be properly maintained so that they are free from abrupt changes in level of over ¼ inch (or ½ inch if the change in level is beveled), which are difficult if not impossible to traverse by a person with a mobility disability, and cross-slopes of more than two percent, which may cause a wheelchair or scooter to tip over sideways. Pedestrian rights of way must also be sufficiently wide to allow passage of a mobility device. Barriers such as light poles, trash cans and other obstructions must not narrow the pedestrian right of way such that it is impassable for those with mobility disabilities. Finally, such individuals require that

1  alternative accessible routes be provided during construction that results in sidewalk
2  closures.

3       16.    Plaintiffs made efforts to resolve this dispute without litigation.  In a letter
4  dated April 10, 2014, Plaintiffs identified the multiple deficiencies and requested that
5  Defendants remedy or make plans to remedy the violations.  Defendants failed to provide
6  an adequate response to this letter.

7       Plaintiffs thus bring this action for declaratory and injunctive relief to remedy
8  Defendants' violation of the aforementioned federal and state statutes.

9                                  **PARTIES**

10      17.    Named Plaintiff Hector Ochoa is a resident of Signal Hill, a community that
11  is completely surrounded by the City of Long Beach, who frequently travels throughout
12  Long Beach. He uses a motorized wheelchair for mobility.  Plaintiff Ochoa is a "qualified
13  person with a disability" and a person with "a disability" within the meaning of all
14  applicable statutes and regulations, including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104,
15  29 U.S.C. § 705(20)(B), and California Government Code § 12926. Plaintiff Ochoa has
16  experienced and continues to experience barriers along pedestrian rights of way in the
17  City of Long Beach because of Defendants' ongoing violations.

18      18.    Named Plaintiff Cynde Soto is a resident of Long Beach who uses a
19  motorized wheelchair for mobility.  Plaintiff Soto is a "qualified person with a disability"
20  and a person with "a disability" within the meaning of all applicable statutes and
21  regulations, including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B),
22  and California Government Code § 12926.  Plaintiff Soto has experienced and continues
23  to experience barriers along pedestrian rights of way in the City of Long Beach because of
24  Defendants' ongoing violations.

25      19.    Named Plaintiff Cathy Shimozono is a resident of Long Beach who uses a
26  motorized wheelchair for mobility.  Plaintiff Shimozono is a "qualified person with a
27  disability" and a person with "a disability" within the meaning of all applicable statutes
28  and regulations, including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, 29 U.S.C. §

705(20)(B), and California Government Code § 12926.   Plaintiff Shimozono has experienced and continues to experience barriers along pedestrian rights of way in the City of Long Beach because of Defendants' ongoing violations.

20.   Named Plaintiff Ben Rockwell is a resident of Long Beach who uses a motorized wheelchair for mobility.  Plaintiff Rockwell is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations, including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B), and California Government Code § 12926.  Plaintiff Rockwell has experienced and continues to experience barriers along pedestrian rights of way in the City of Long Beach because of Defendants' ongoing violations.

21.   Named Plaintiff Sharon Parker is a resident in Long Beach who frequently travels throughout Long Beach and uses a cane for mobility.  Plaintiff Parker is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations, including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B), and California Government Code § 12926.  Plaintiff Parker has experienced and continues to experience barriers along pedestrian rights in the City of Long Beach of way because of Defendants' ongoing violations.

22.   The Plaintiff class consists of all persons who have mobility disabilities who use or will use pedestrian rights of way in the City of Long Beach.

23.   References in this document to "Plaintiffs" shall be deemed to include the Named Plaintiffs and each member of the class, unless otherwise indicated.

24.   Presently, and at all times relevant to this complaint, Defendant City of Long Beach (hereafter "City") has been a public entity within the meaning of Title II of the ADA, has received federal financial assistance within the meaning of the Rehabilitation Act, and has received state financial assistance within the meaning of Government Code § 11135.

25.   The City is a local government entity with the responsibility of providing Plaintiffs with access to its public facilities, programs, services, and activities.  The City is

1  responsible for constructing, maintaining, repairing, and regulating the system of
2  pedestrian rights of way within the City.

3      26.    Bob Foster is the Mayor of the City (hereinafter the "Mayor"); Robert
4  Garcia, Suja Lowenthal, Gary Delong, Patrick O'Donnel, Gerrie Schipske, Dee Andrews,
5  James Johnson, Al Austin, and Steven Neal are members of the Long Beach City Council
6  (hereinafter the "City Council").  The Mayor and the City Council are each, in their
7  official capacity, legally responsible for ensuring the City's compliance with federal and
8  state law.

9      27.    Plaintiffs are informed and believe and thereon allege that each Defendant
10  was the agent and employee of every other Defendant and was at all times relevant to this
11  Complaint acting within the scope of such agency.

12      28.    The City, the Mayor and the City Council members will be collectively
13  referred to as "Defendants."

14      29.    References in this document to "Defendants" shall be deemed to include all
15  named Defendants, unless otherwise indicated.

16                      **CLASS ACTION ALLEGATIONS**

17      30.    The Named Plaintiffs bring this action individually, and as a class action
18  under Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who have
19  mobility disabilities who use or will use pedestrian rights of way in the City of Long
20  Beach.

21      31.    Each member of the proposed class is a "qualified person with a disability"
22  and/or a person with a "disability" pursuant to 42 U.S.C. § 12131(2), Section 504 of the
23  Rehabilitation Act, and/or applicable California law.

24      32.    The persons in the class are so numerous that the joinder of all such persons
25  is impracticable and that the disposition of their claims in a class action rather than in
26  individual actions will benefit the parties and the Court.  The number of class members is
27  at least in the thousands or tens of thousands of persons who have mobility disabilities
28  who reside in or visit the City.

33.     The violations of the ADA, the Rehabilitation Act and related federal and California state statues set forth in detail herein impact all members of the proposed class by denying them access to the public pedestrian rights of way in the City of Long Beach.

34.     Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole.  Class claims are brought for the purposes of obtaining declaratory and injunctive relief only.

35.     The claims of Named Plaintiffs are typical of those of the class in that they arise from the same course of conduct engaged in by Defendants, and the Named Plaintiffs seek the same relief as the proposed class – meaningful access to the City's pedestrian rights of way.  The relief sought herein will therefore benefit all class members alike.

36.     Named Plaintiffs will fairly and adequately represent the interests of the class.  They have no interests adverse to the interests of other members of the class and have retained counsel who are competent and experienced in litigating complex class actions, including large-scale disability rights class action cases.

37.     The requirements of Rule 23 of the Federal Rules of Civil Procedure are met with regard to the proposed class in that:

a.     The class is so numerous that it would be impractical to bring all class members before the Court individually;

b.     There are questions of law and fact which are common to the class;

c.     The Named Plaintiffs' claims for declaratory and injunctive relief are typical of the claims of the class;

d.     The Named Plaintiffs will fairly and adequately represent common class interests and are represented by counsel who are highly experienced in class actions and the disability rights issues in this case; and

e.     Defendants have acted or refused to act on grounds generally applicable to the class.

## FACTS APPLICABLE TO ALL CLAIMS

38.     Defendants have systematically failed, and are failing, to ensure that the City's pedestrian rights of way are accessible, in violation of federal and state law.  As a result of Defendants' policies and practices with regard to the City's pedestrian rights of way and access for persons with mobility disabilities, the pedestrian rights of way are characterized by pervasive disability access problems, as described above.

39.     To give just some examples of the barriers at issue, many pedestrian rights of way are blocked due to tree roots, resulting in abrupt changes in level of the sidewalk surface that people who use wheelchairs, scooters, walkers, canes and assistive devices for mobility cannot traverse. Others contain obstacles such as light poles, landscaping, newspaper stands, trash cans and bus benches, which narrow the path of travel so that people who use wheelchairs, scooters, walkers and other assistive devices for mobility cannot navigate along them. Many pedestrian rights of way are overdue for maintenance, with broken, cracked, crumbled, sunken, uneven, and/or caved concrete.  Defendants have also failed to provide accessible alternative routes during construction of pedestrian rights of way.

40.     Defendants have also failed, and are failing, to install and maintain curb ramps in violation of federal and state law.  For example, many intersections in the City have no curb ramps or an inadequate number of curb ramps.  Even among the intersections that do have curb ramps, many of them have curb ramps that are improperly installed and/or maintained, have lips where the sidewalk meets the street that are too steep for people who use wheelchairs, scooters, walkers, canes or other assistive devices for mobility to use, or are otherwise noncomplying (slopes too steep or hazardous cross-slopes). Many other curb ramps are not maintained; they are broken, cracked, crumbled, sunken, uneven, and/or caved.

41.     The systemic failures to construct and maintain in accessible condition the public pedestrian rights of way in the City of Long Beach have caused the City's

1   pedestrian rights of way to be inaccessible to people with mobility disabilities when
2   viewed in their entirety, in violation of state and federal law.

3       42.    Plaintiffs allege that these barriers are not isolated or limited circumstances.
4   Rather, these barriers are present throughout the City, thus denying access to persons with
5   mobility disabilities City-wide. Persons with mobility disabilities encounter numerous
6   obstacles to using pedestrian rights of way throughout the City.

7       43.    Defendants have failed, and are failing, to prepare and implement a
8   compliant Self-Evaluation and Transition Plan relating to pedestrian rights of way
9   facilities as required under federal regulations and California state statutes.   State law
10  incorporates as a minimum standard the protections and prohibitions contained in Section
11  202 of the Americans with Disabilities Act of 1990 ("ADA") (42 U.S.C. § 12132) and the
12  federal rules and regulations adopted in implementation thereof. Cal. Gov. Code § 11135,
13  *et seq.* The federal regulations of the ADA and Section 504 of the Rehabilitation Act
14  require that public entities create a Self-Evaluation and a Transition Plan.  A Self-
15  Evaluation must include an evaluation of whether current services, policies, and practices
16  discriminate on the basis of disability.  A Transition Plan must include, among other
17  things, an up-to-date schedule for providing curb ramps or other sloped areas where
18  pedestrian rights of way cross streets.  Though Defendants prepared what they identified
19  as an initial self-evaluation and transition plan, that plan was incomplete, failing to assess
20  and identify many barriers that deny persons with mobility impairments access to
21  pedestrian rights of way, including, among other barriers, mid-block barriers on City
22  sidewalks and pedestrian routes. Defendants also failed to maintain a copy of the original
23  transition plan and, where Defendants initially identified pedestrian barriers and target
24  dates for removal of such barriers, Defendants failed to complete the proposed barrier
25  removal within the self-imposed schedule and failed to provide an updated plan
26  identifying when they will complete such work.   Defendants' failure to prepare and
27  implement a compliant Self-Evaluation and a Transition Plan relating to the pedestrian
28

1  right of way facilities in the City of Long Beach discriminates against persons with

2  mobility disabilities.

3      44.    As a result of the systemic barriers at issue, persons with mobility disabilities

4  have regularly been denied access to the City's accommodations, public programs,

5  services, and activities.  Furthermore, these barriers discourage persons who have mobility

6  disabilities from traveling safely or at all to many areas of the City. These barriers have

7  also delayed travel and caused these persons to fear for their safety, as these conditions

8  often create situations that are dangerous for persons with mobility disabilities.

9                    **EXPERIENCES OF THE NAMED PLAINTIFFS**

10     45.    The experiences of Named Plaintiffs Ochoa, Soto, Shimozono, Rockwell,

11  and Parker are representative of the nature of barriers experienced by persons with

12  mobility disabilities in the City.

13     46.    Named Plaintiff Hector Ochoa uses a motorized wheelchair due to his

14  mobility disability.  Plaintiff Ochoa lives a block away from Long Beach in Signal Hill

15  and regularly and frequently travels throughout Long Beach. He has encountered

16  numerous obstacles to using pedestrian rights of way when traveling in and around Long

17  Beach.  Such obstacles include, but are not limited to, those described below.

18     47.    Plaintiff Ochoa is deterred from traveling on sidewalks near his

19  neighborhood and throughout Long Beach because of uplifted, cracked sidewalks, missing

20  curb cuts, and obstructions blocking sidewalks. For example, Plaintiff Ochoa has been

21  deterred from traveling along Alamitos Avenue and New York Street, Alamitos Avenue

22  and Arcadia Court, 15th Street and Gardenia Avenue, and on Cherry Avenue in front of

23  following addresses: 1519, 1531, and 1534. Plaintiff Ochoa is deterred from the above

24  mentioned locations due to the cracked and damaged sidewalks that pose a risk to his

25  safety.

26     48.    Plaintiff Ochoa also encounters barriers such as signs and other objects that

27  obstruct his clear path of travel on pedestrian routes in the City. These blocked locations

28  include Alamitos Avenue and 15th Street, where a city sign blocks a clear path of travel

**CLASS ACTION COMPLAINT**

and on the east side of Alamitos Avenue south of New York Street, where a sewer cap placed on the sidewalk limits the space available for Plaintiff Ochoa to pass.

49.     Plaintiff Ochoa also encounters barriers on Alamitos Avenue and Alhambra Court, Alamitos Avenue and New York Street, 1493 Gundry Avenue, 1528 15th Street, 15th Street and Walnut Avenue, 1615 Cherry Avenue, and 1752 Cheery Avenue where uplifts in the sidewalk make it very difficult for him to travel.  On 1554 Cherry Avenue an uplifted sidewalk that is too dangerous to safely cross forces Plaintiff Ochoa out into traffic in order to continue his path or travel, exposing him to even more danger in the form of passing motorists.  On the corners of 15th Street and Warren Avenue there are no curb cuts, making travel inaccessible to Plaintiff Ochoa.  When traveling along 15th Street, Plaintiff Ochoa is forced to back-track and cross the street in order to continue his travel.

50.     Consequently, Plaintiff Ochoa is deprived of his independence and is segregated from his neighborhood and other parts of his community.  He is deterred from using the City's sidewalks to visit public facilities, places of public accommodations or friends because he chooses instead to remain safe from the serious risks associated with the inaccessible pedestrian rights of way throughout the City.

51.     Named Plaintiff Cynde Soto uses a motorized wheelchair due to her mobility disability.  Plaintiff Soto lives on Cedar Avenue in Long Beach, California.  She has encountered numerous obstacles to using pedestrian rights of way in her neighborhood and throughout the City.  Such obstacles include, but are not limited to, those described below.

52.     Plaintiff Soto is deterred from traveling on sidewalks near restaurants and stores in her neighborhood and in other areas of the City because of uplifted, cracked sidewalks and permanent obstructions blocking sidewalks. For example, Plaintiff Soto has been deterred from traveling across the intersections of Pacific and 5th Street and Pacific and 6th Street because several of the truncated domes on those corners were not set into the pavement correctly, making it difficult for her to pass over the domes in her

1  wheelchair. Furthermore, Plaintiff Soto is unable to travel on the north side of 6th Street

2  west of Solano Court because of sidewalk damage and on the south side of 6th Street and

3  Solano Court because of a raised uplift in the sidewalk that she fears could throw her chair

4  off balance.

5        53.   Plaintiff Soto has also been deterred from accessing pedestrian rights of way

6  in Long Beach by the placement of poles, trash cans, electric boxes or bus stop benches

7  blocking the sidewalk.  For example, close to the corner of Anaheim Street and Atlantic

8  Avenue, at Walnut Avenue between 7th Street and Nebraska, at 1340 7th street, and at

9  1445 Walnut Avenue, trash cans often block the path of travel and force Plaintiff Soto to

10  turn around and find another street to get to her destination.

11        54.   Plaintiff Soto encounters permanent barriers on Alamitos Avenue and

12  Anaheim Street where an electric box blocks the sidewalk and forces Plaintiff Soto onto

13  an improperly sloped sidewalk/driveway.  Furthermore, traveling on the west side of

14  Alamitos towards Alhambra Court and beyond, there are many poles and signs that block

15  the path of travel, making it inaccessible for Plaintiff Soto.  Plaintiff Soto also is deterred

16  from traveling on the south side of 7th Street and Nebraska Avenue because the bus stop

17  bench located close to the corner narrows the path of travel on the sidewalk and does not

18  give her enough space to pass safely.

19        55.   The sidewalks on Elm Avenue between Cobre Way and 4th Street are

20  uplifted by tree roots and inaccessible to Plaintiff Soto, which deters her from visiting any

21  businesses or friends in the area.  Plaintiff Soto is unable to access the sidewalk on the

22  north side of 3rd Street between Atlantic Avenue and Lime Avenue because the sidewalk

23  is broken and uplifted by tree roots. Plaintiff Soto is also deterred from traveling on the

24  sidewalks on the north side of Anaheim Street just past Alamitos Avenue because the

25  sidewalks are buckled and uplifted.

26        56.   Plaintiff Soto fears traveling along both sides of 7th Street between Cerritos

27  Avenue and Elm Avenue because of the risks she faces due to severely cracked sidewalks.

28  Furthermore, on the corner of Elm Avenue and 3rd Street, there are no curb cuts that

**CLASS ACTION COMPLAINT**

allow for north and south travel along Elm Avenue. A person who uses a wheelchair, like Plaintiff Soto, is forced to travel out into street traffic, which is very dangerous, and turn north or south to travel in those directions. As a result, Plaintiff Soto is deterred from numerous activities, including shopping and dining at local restaurants.

57.    Consequently, Plaintiff Soto is deprived of her independence and is segregated from her neighborhood and other parts of her community. Moreover, she is unable to visit public facilities, places of public accommodations or friends because she chooses instead to remain safe from the serious risks associated with the inaccessible pedestrian rights of way in the City.

58.    Due to her mobility disability, Named Plaintiff Cathy Shimozono uses a motorized wheelchair.  She lives near the intersection of 5th Street and Bonito Avenue in Long Beach.  Plaintiff Shimozono has encountered numerous obstacles to using the sidewalks in her neighborhood and throughout the City. Such obstacles include, but are not limited to, those described below.

59.    Plaintiff Shimozono is deterred from traveling in her neighborhood because of damaged, buckled and cracked sidewalks. For example, on the east side of Atlantic Avenue right before 5th Street, Plaintiff Shimozono has encountered a sidewalk that is uplifted due to tree roots, which makes the route painful and dangerous for her. Furthermore, Plaintiff Shimozono is deterred from traveling on Bonito Avenue between 4th and 5th Streets because of more uplifts and cracks in the sidewalk. On the south side of 5th Street crossing Orange Avenue there is also significant damage in the asphalt that makes it inaccessible for Plaintiff Shimozono to cross.

60.    Plaintiff Shimozono often runs errands, shops, or goes to restaurants around her neighborhood on 4th Street.  However, she is deterred from using many streets in this area because of damaged, buckled and cracked sidewalks. Plaintiff Shimozono is deterred from traveling along Cerritos Avenue between 4th and 5th Streets because of uplifted and cracked sidewalks she has encountered.  On the east side of Cerritos Avenue north of 4th

Street, Plaintiff Shimozono has encountered a stretch of sidewalk that is severely uplifted and cracked, making it highly dangerous for her to use.

61.     As a result of the foregoing, Plaintiff Shimozono has been and continues to be deprived of her independence while experiencing segregation from her neighborhood and other parts of her community. She is unable to visit public facilities, places of public accommodations or friends because she chooses instead to remain safe from the serious risks associated with the inaccessible pedestrian rights of way in the City.

62.     Named Plaintiff Ben Rockwell lives in Long Beach and uses a motorized wheelchair for mobility. Plaintiff Rockwell runs errands and shops for himself throughout Long Beach. He also has ongoing medical appointments, requiring him to travel to Long Beach Memorial Hospital. Because of multiple barriers he encounters on pedestrian rights of way, however, Plaintiff Rockwell must face serious risks each day he travels around the City. Such obstacles include, but are not limited to, those described below.

63.     Plaintiff Rockwell often encounters inaccessible sidewalks caused by the absence of curb ramps and poorly maintained curb ramps and sidewalks.   For example, on 475 West 5th Street and on the north side of 5th Street approaching Del Rey Avenue Plaintiff Rockwell has encountered uplifted and cracked sidewalks that are difficult to traverse because of their poor condition. Additionally, on the corners of Linden Avenue and Broadway, Plaintiff Rockwell is unable to cross the street safely due to holes and cracks in the ground at the entrance to the crosswalk.

64.     Plaintiff Rockwell frequently travels along Atlantic Avenue where he encounters uprooted sidewalks and cracks that pose a risk to his safety. For example, the sidewalk on the east side of Atlantic Avenue north of 11th Street is almost impassable due to a severely uprooted and cracked sidewalk. This sidewalk also serves as a primary route to a senior living center where many residents rely on walkers or wheelchairs.

65.     Plaintiff Rockwell has also encountered barriers at Pacific Avenue and 28th Street, Willow Street from Grand Avenue to Lakewood Blvd., and The Promenade at 3rd Street, among other locations. Often, Plaintiff Rockwell, because of improperly placed

curb ramps, must travel outside of the crosswalk into a lane of street traffic to access the pedestrian right-of-way to cross the street.

66.     Additionally, on at least one occasion, the City planned to undertake construction work that would have blocked the pedestrian routes in front of Plaintiff Rockwell's residence, without providing an alternate, accessible temporary route for persons with mobility impairments.   Only after Plaintiff Rockwell made multiple complaints to the City about the threatened lack of access caused by the planned construction, did the City provide Mr. Rockwell with an alternate route.

67.     As a result of the foregoing, Plaintiff Rockwell has been and continues to be deprived of his independence while experiencing segregation from his neighborhood and other parts of his community.  He often decides to not visit public facilities, places of public accommodation or friends because he chooses instead to remain safe from the serious risks associated with the inaccessible pedestrian rights of way in the City.

68.     Named Plaintiff Sharon Parker uses a cane to walk due to her mobility disability.  She lives in Long Beach and has encountered numerous obstacles to using the sidewalks in her neighborhood and throughout the City. These barriers include, but are not limited to, those described below.

69.     Plaintiff Parker has been unable to safely and reliably utilize the sidewalks in Long Beach to board or exit the bus at the southbound stop at 51st Street and Atlantic Avenue, the southbound stop at Columbia Street and Atlantic Avenue, the southbound stop at 46th Street and Atlantic Avenue, and the southbound stop at 33rd Street and Atlantic Avenue, among other locations throughout the City of Long Beach because the sidewalks on those streets contain barriers, including poles, trash cans, misplaced tree wells, and bus benches that block or significantly narrow the path of travel to and from the bus or bus stops.

70.     Ms. Parker also encounters barriers from obstructions in sidewalks. She is often forced towards the street and put off balance on the east side of Atlantic Avenue

1 | south of Del Amo Boulevard, where there is brush obstructing and overhanging on the
2 | sidewalk.

3 |       71.    These experiences are typical of those experienced by persons with mobility
4 | disabilities in the City and demonstrate the inaccessibility, fear, humiliation, and isolation
5 | that people with mobility disabilities experience while trying to navigate the system of
6 | pedestrian rights of way in the City.  Defendants have received notice of these violations
7 | of state and federal law, yet have failed to remediate the barriers that deny safe access to
8 | pedestrian rights of way to persons with mobility impairments.

9 |       72.    Plaintiffs therefore seek injunctive relief requiring Defendants to ensure
10 | compliance with Title II of the ADA and its accompanying regulations, Section 504 of the
11 | Rehabilitation Act and its accompanying regulations, California Government Code §
12 | 11135, *et seq.*, California Civil Code § 54, *et seq.* and California Government Code §
13 | 4450.

### FIRST CAUSE OF ACTION

### Title II of the Americans with Disabilities Act

### 42 U.S.C. § 12101, *et seq.*

17 |       73.    Plaintiffs incorporate by reference each and every allegation contained in the
18 | foregoing paragraphs.

19 |       74.    Title II of the ADA provides in pertinent part: "[N]o qualified individual with
20 | a disability shall, by reason of such disability, be excluded from participation in or be
21 | denied the benefits of the services, programs, or activities of a public entity, or be
22 | subjected to discrimination by any such entity." 42 U.S.C. § 12132.

23 |       75.    At all times relevant to this action, the City is a "public entity" within the
24 | meaning of Title II of the ADA and provides a program, service or activity to the general
25 | public.

26 |       76.    At all times relevant to this action, Plaintiffs are qualified individuals with
27 | disabilities within the meaning of Title II of the ADA and meet the essential eligibility
28 | requirements for the receipt of the services, programs, or activities of the City.  42 U.S.C.

1   § 12131.

2   77.   Defendants are mandated to operate each program, service, or activity "so that,

3   when viewed in its entirety, it is readily accessible to and useable by individuals with

4   disabilities." 28 C.F.R. § 35.150; *see also* 28 C.F.R. §§ 35.149 & 35.151. Pedestrian rights

5   of way themselves constitute a vital public program, service, or activity under Title II of

6   the ADA. 28 C.F.R. § 35.104; *Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir.

7   2002).

8   78.   The regulations implementing Title II of the ADA specifically provide that a

9   public entity must install curb ramps at intersections whenever it newly constructs or

10   alters sidewalks, streets, roads and/or highways at any time after January 26, 1992 and

11   must comply with Uniform Federal Accessibility Standards (UFAS) or with the

12   Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities

13   (ADAAG). 28 C.F.R. § 35.151.  A street resurfacing project by a public entity is an

14   alteration under the meaning of the regulation. *Kinney v. Yersalim*, 9 F.3d 1067, 1073-74

15   (3rd Cir. 1993); *Lonberg v. City of Riverside*, No. 97-CV-0237, 2007 WL 2005177, at * 6

16   (C.D. Cal. 2007).

17   79.   The regulations implementing Title II of the ADA provide that a public entity

18   must maintain the features of all facilities required to be accessible by the ADA. 28 C.F.R.

19   § 35.133. Facilities required to be accessible include roads, walks, and passageways. 28

20   C.F.R. § 35.104.

21   80.   The regulations implementing Title II also provide that a public entity must

22   provide and maintain accessibility for temporary facilities, including but not limited to,

23   "temporary safe pedestrian passageways around a construction site." 28 C.F.R. 36 App. A

24   4.1.1(4).

25   81.   The City's pedestrian rights of way are not fully, equally, or safely accessible

26   to Plaintiffs when viewed in their entirety.

27   82.   The sidewalks, cross walks, and other walkways at issue constitute facilities

28   within the meaning of ADAAG and UFAS. Plaintiffs are informed and believe, and on

**CLASS ACTION COMPLAINT**

that basis allege, that since January 26, 1992, Defendants have constructed, altered, or repaired parts of these facilities within the meaning of the ADAAG and the UFAS, and that Defendants, through their policies and practices, have failed to make such facilities readily accessible to and usable by persons with disabilities as required under federal accessibility standards and laws.

83.    Plaintiffs are informed, believe and thereon allege that Defendants and their agents and employees have failed to provide accessible alternative routes during construction through their policies and practices with regard to the City's pedestrian rights of way.

84.    Plaintiffs are informed, believe and thereon allege that Defendants and their agents and employees have failed and continue to fail to maintain accessible facilities on pedestrian rights of way by failing to fix uneven, and/or crumbling pavement, failing to remove protruding and/or moveable obstructions, failing to ensure a sufficiently wide path of travel, and failing to correct excessive slopes and cross-slopes, among other failures to maintain accessible facilities in violation of Title II of the ADA.

85.    Plaintiffs are informed, believe and thereon allege that Defendants and their agents and employees have violated and continue to violate Title II of the ADA by failing to timely respond to and remedy complaints about barriers involving the City's pedestrian rights of way through their policies and practices.  For example, Plaintiff Rockwell has requested the removal of barriers limiting his access to pedestrian rights of way at multiple locations throughout the City, and Defendants have failed to adequately correct or remove such barriers.

86.    The regulations implementing Title II of the ADA also require public entities to prepare and implement a Self-Evaluation and Transition Plan to evaluate and improve the accessibility of their facilities.  Public entities that have authority over streets, roads or walkways must include in their transition plan "a schedule for providing curb ramps or other sloped areas where pedestrian walks cross curbs." 28 C.F.R. § 35.150(d)(1)-(2). Defendants have failed to provide a comprehensive transition plan with a complete and up-to-date schedule for providing curb ramps or other sloped areas where pedestrian

1   walks cross curbs.   In fact, the City of Long Beach has asserted in response to a Public

2   Records Act request from Plaintiffs' counsel that the City has not even preserved a copy

3   of the non-compliant Self Evaluation and Transition Plan concerning pedestrian rights of

4   way that it did prepare.   Even where the City of Long Beach has identified pedestrian

5   barriers and target dates for removal of such barriers, it has failed to complete the

6   proposed barrier removal within the self-imposed schedule and has failed to provide an

7   updated plan identifying when it will complete such work.   Defendants' transition

8   planning efforts have also failed to include plans for identifying and remedying mid-block

9   barriers that block the path of travel for persons with mobility impairments.   Furthermore,

10  Defendants have failed to make a copy of their transition plan available for public

11  inspection, in violation of 28 C.F.R. § 35.150(d)(1).

12      87.    The ADA's regulations at 43 C.F.R. §117.550(a)(3) prevent public entities

13  from refusing to comply with their obligations to provide persons with disabilities

14  meaningful access to their programs and services by claiming that doing so would impose

15  an undue financial or administrative burden, unless such a determination is made by an

16  agency head or his or her designee after consulting all agency resources available for use

17  in the funding and operation of the conducted program or activity and the determination is

18  accompanied by a written statement of the reasons for reaching that conclusion.   On

19  information and belief, the City, through its agency heads and/or designees, has failed to

20  make such a determination accompanied by the required written statement and has,

21  therefore, failed to demonstrate that providing the access Plaintiffs seek to its pedestrian

22  rights of way would impose an undue financial or administrative burden.

23      88.    As a direct and proximate result of the aforementioned acts, Plaintiffs have

24  suffered, and continue to suffer, difficulty, hardship and danger, due to Defendants'

25  failure to address accommodations, modifications, services and access required for

26  Plaintiffs' disabilities.

27      89.    Because Defendants' discriminatory conduct is ongoing, declaratory and

28  injunctive relief are appropriate remedies.

**CLASS ACTION COMPLAINT**

90.     Pursuant to 42 U.S.C. § 12133, Plaintiffs are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees, expert expenses, and costs incurred in bringing this action.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## SECOND CAUSE OF ACTION

### Section 504 of the Rehabilitation Act

### 29 U.S.C. § 794, *et seq.*

91.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

92.     Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . ." 29 U.S.C. § 794.

93.     Plaintiffs are otherwise qualified to participate in the services, programs, or activities that are provided to individuals in the City. *See* 29 U.S.C. § 794(b).

94.     The City is a direct recipient of federal financial assistance sufficient to invoke the coverage of Section 504, and has received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

95.     Defendants and their agents and employees have and continue to violate the Rehabilitation Act and the regulations promulgated thereunder by excluding Plaintiffs from participation in, denying Plaintiffs the benefits of, and subjecting Plaintiffs based solely by reason of their disability to, discrimination in the benefits and services of the City's pedestrian rights of way and for the reasons set forth above.

96.     Under Section 504, a recipient of federal financial assistance must install compliant curb ramps at intersections whenever it newly constructs or alters sidewalks, streets, roads and/or highways at any time after June 3, 1977. *Willits v. City of Los Angeles*, 925 F. Supp. 2d. 1089, 1094 (C.D. Cal. 2013).  Defendants have additionally

violated Section 504 by failing to construct compliant curb ramps at intersections throughout the City where they have newly constructed or altered streets, roads, and/or highways since June 3, 1977.

97. As a direct and proximate result of the aforementioned acts, Plaintiffs suffered and continue to suffer humiliation, hardship, and anxiety due to Defendants' discrimination on the basis of Plaintiffs' disabilities.

98. Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

99. Pursuant to 29 U.S.C. § 794(a), Plaintiffs are entitled to declaratory and injunctive relief, and to recover from Defendants the reasonable attorneys' fees and costs incurred in bringing this action.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### THIRD CAUSE OF ACTION

### California Government Code § 11135

100. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

101. Section 11135(a) of the California Government Code provides in pertinent part: "No person in the State of California shall, on the basis of . . . disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the state."

102. The City is funded directly by the State of California and receives financial assistance from the State of California sufficient to invoke the coverage of Government Code § 11135, *et seq*. The City has received such funding and financial assistance each year going back at least several decades, and at all times relevant to the claims asserted in this Complaint. California Government Code § 11135(b) incorporates the protections and prohibitions contained in the Americans with Disabilities Act ("ADA") and its implementing regulations.  Section 11135(b) states in pertinent part, that:

With respect to discrimination on the basis of disability, programs and activities subject to subdivision (a) shall meet the protections and prohibitions contained in Section 202 of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12132), and the federal rules and regulations adopted in implementation thereof, except that if the laws of this state prescribe stronger protections and prohibitions, the programs and activities subject to subdivision (a) shall be subject to stronger protections and prohibitions.

103.   For all of the reasons outlined above, Defendants have violated and continue to violate the Americans with Disabilities Act and therefore have violated and continue to violate California Government Code § 11135 (b).

104.   The federal regulations issued by the U.S. Department of Justice which implement the protections and prohibitions of the ADA require public entities to prepare and implement a Self-Evaluation and a Transition Plan.  A Self-Evaluation must "evaluate current services, policies and practices, and the effects thereof, that do not or may not meet the requirement of this part and, to the extent modification of any such services, policies, and practices is required, the public entity shall proceed to make the necessary modifications." 28 C.F.R. § 35.105(a).  Further, "a public entity shall provide an opportunity to interested persons…to participate in the self-evaluation process by submitting comments." 28 C.F.R. 35.105(b).  A Transition Plan must "(i) identify physical obstacles in the public entity's facilities that limit accessibility of its programs or activities to individuals with disabilities; (ii) describe in detail the methods that will be used to make the facilities accessible; (iii) specify the schedule for taking the steps necessary to achieve compliance with this section and, if the time period of the transition plan is longer than one year, identify steps that will be taken during each year of the transition period; and (iv) indicate the official responsible for implementation of the plan." 28 C.F.R. § 35.150(d)(3).

105.   The federal regulations issued by the U.S. Department of Justice which implement the protections and prohibitions of the ADA further specify that "[i]f a public entity has responsibility or authority over streets, roads, or walkways, its transition plan

shall include a schedule for providing curb ramps or other sloped areas where pedestrian walks cross curbs, giving priority to walkways serving entities covered by the [ADA], including State and local government offices and facilities, transportation, places of public accommodation, and employers, followed by walkways serving other areas." 28 C.F.R. § 35.150(d)(2).

106.   The federal regulations requiring a Self-Evaluation and a Transition Plan are incorporated into California Government Code §11135 because the protections afforded under Section 11135 include those of the federal regulations discussed above.

107.   Due to the acts and omissions alleged herein, Defendants have failed to maintain or implement a compliant Self-Evaluation and a Transition Plan regarding the pedestrian rights of way in the City of Long Beach in violation of the ADA and by incorporation in violation of California Government Code § 11135(b).

108.   Defendants have further violated California Government Code §11135 by failing to prepare and maintain a compliant Self-Evaluation and a compliant Transition Plan pursuant to the requirements of Cal. Code Regs. Tit. 22 §§ 98251 & and 98258.

109.   Pursuant to California Government Code § 11139, Plaintiffs have a private right of action to enforce California Government Code § 11135(b).

110.   Defendants and their agents and employees have and continue to violate California Government Code § 11135 by unlawfully denying Plaintiffs the benefits of, and unlawfully subjecting Plaintiffs to discrimination under the City's programs and activities and for the reasons set forth above.

111.   Defendants have refused and failed to provide Plaintiffs with full and equal access to their facilities, programs, services and activities as required by California Government Code § 11135, *et seq.* through their policies and practices with regard to the City's pedestrian rights of way and disability access.

112.   As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer difficulty, hardship and danger, due to Defendants' failure

to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

113.   Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

114.   Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### FOURTH CAUSE OF ACTION

### California Government Code § 4450, *et seq.*

115.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

116.   The City's pedestrian rights of way are publicly funded through the use of state, county and/or municipal funds and intended for use by the public within the meaning of California Government Code § 4450, *et seq.*

117.   California Government Code § 4450, *et seq.*  Section 4450(a) states in pertinent part, that:

> …all buildings, structures, sidewalks, curbs, and related facilities, constructed in this state by the use of state, county, or municipal funds, of the funds of any political subdivision of the state shall be accessible to and usable by persons with disabilities.

118.   Defendants have constructed, altered, installed, maintained and/or operated its facilities in violation of disability access requirements under California Government Code § 4450, *et seq.*, and regulations implemented pursuant thereto.  The aforementioned acts and omissions of Defendants constitute a denial of full and equal access to and use of the pedestrian right of way facilities in the City of Long Beach.

119.   Pursuant to California Health and Safety Code § 19953, Plaintiffs have a private right of action to enforce California Government Code § 4450, *et seq.*

120.   Defendants' and their agents and employees have and continue to violate California Government Code § 4450, *et seq.*, and regulations implemented pursuant

**CLASS ACTION COMPLAINT**

thereto, by constructing, altering, installing, maintaining, and/or operating its pedestrian rights of way in violation of disability access requirements and for the reasons set forth above. The aforementioned acts and omissions of Defendants constitute a denial of equal access to and use of the City's pedestrian rights of way and cause Plaintiffs to suffer deprivations of their civil rights.

121. As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer, humiliation difficulty, hardship and danger, due to Defendants' failures to address accommodations, modifications, services and access required for Plaintiffs' disabilities.

122. Because the City's discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

123. Plaintiffs are also entitled to reasonable attorneys' fees and costs in filing this action.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## FIFTH CAUSE OF ACTION

### Violation of California Civil Code §§ 54 -54.3

124. Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

125. California Civil Code § 54(a) provides that "[i]ndividuals with disabilities or medical conditions have the same rights as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings . . . public facilities and ... and other public places."

126. Plaintiffs are persons with disabilities within the meaning of California Civil Code § 54(b)(1) and California Government Code § 12926.

127. Defendants' pedestrian rights of way are sidewalks, walkways, public facilities or other public places within the meaning of California Civil Code § 54, *et seq.*

128. By failing to provide Plaintiffs full and equal access to pedestrian rights of way, Defendants have deprived Plaintiffs of their right to have full and free use of

1  sidewalks, walkways, public facilities or other public places in violation of California

2  Civil Code § 54.

3      129.  The pedestrian rights of way in the City of Long Beach also constitute places

4  of public accommodation and/or places to which the general public is invited within the

5  meaning of California Civil Code §§ 54.1 and 54.3.

6      130.  By denying Plaintiffs full and equal access to and use and enjoyment of

7  pedestrian rights of way in the City of Long Beach, Defendants have and are violating

8  Plaintiffs' rights under California Civil Code § 54.1, *et seq.* to full and equal access to and

9  use and enjoyment of places of public accommodation and/ or places to which the public

10  is invited.

11      131.  Under California Civil Code § 54(c), a violation of the ADA also constitutes

12  a violation of California Civil Code § 54, *et seq.*

13      132.  For all the reasons outlined above, Defendants violated the rights of Plaintiffs

14  under the Americans with Disabilities Act, and therefore violated California Code § 54.

15      133.  As a direct and proximate result of the aforementioned acts, Plaintiffs have

16  suffered and continue to suffer difficulty, hardship, and danger.

17      134.  Under California Civil Code §§ 54 - 54.3, Plaintiffs are entitled to declaratory

18  relief and attorneys' fees and costs in filing this action.

19      WHEREFORE, Plaintiffs pray for relief as set forth below.

20  ## SEVENTH CAUSE OF ACTION

21  ### Declaratory Relief

22      135.  Plaintiffs incorporate by reference herein each and every allegation contained

23  in the foregoing paragraphs.

24      136.  Plaintiffs contend, and are informed and believe that Defendants deny that

25  they are failing to comply with applicable laws prohibiting discrimination against persons

26  with disabilities in violation of the ADA, Section 504 of the Rehabilitation Act, California

27  Government Code §§ 11135 and 4450, and California Civil Code §§ 54 -54.3.

28      137.  A judicial declaration is necessary and appropriate at this time in order that

each of the parties may know their respective rights and duties and act accordingly.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment as follows:

1. A declaration that Defendants' conduct as alleged herein has violated, and continues to violate, Title II of the Americans with Disabilities Act; Section 504 of the Rehabilitation Act of 1973; California Government Code §§ 11135 and 4450; and California Civil Code §§ 54-54.3;

2. An order and judgment enjoining Defendants from violating Title II of the ADA, Section 504 of the Rehabilitation Act, California Government Code §§ 11135 and 4450, and requiring Defendants to undertake remedial measures to mitigate the effects of Defendants' past and ongoing failure to provide full and equal access to persons with mobility impairments to the City's pedestrian rights of way. At a minimum, Plaintiffs request that Defendants be enjoined to take the following actions:

    a. Ensure that the City's pedestrian rights of way when viewed in their entirety are readily accessible to and useable by individuals with mobility disabilities;

    b. Undertake prompt remedial measures to eliminate the physical barriers to access to pedestrian rights of way to make such rights of way accessible to Plaintiffs in accordance with federal and state nondiscrimination statutes;

    c. Ensure that all future new construction and alterations to City pedestrian rights of way comply with the Americans with Disabilities Act Accessibility Guidelines and/or Uniform Federal Accessibility Standards, Title 24 of the California Code of Regulations standards and Cal. Govt. Code §§ 4450, *et seq.*; and

    d. Remain under this Court's jurisdiction until Defendants fully comply with the Orders of this Court.

3. Award Plaintiffs' attorneys' fees, expert expenses, and costs, as provided by law; and

1    4.  Such other relief as the Court finds just and proper.

2

3    DATED: June 4, 2014                  Respectfully Submitted,

4                                         DISABILITY RIGHTS LEGAL CENTER

5

6                                         By: _____

7                                              Richard Diaz
                                               Attorneys for Plaintiffs
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28